IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

|  |  |
|---|---|
| ANTHONY J. ROMANO, | ) |
| *Plaintiff*, | ) |
| v. | ) |
| MARYLAND STATE POLICE, | ) Case No. _____ |
| 1201 Reisterstown Road | ) |
| Pikesville, Maryland 21208, | ) |
| Serve: Roland L. Butler, Secretary | ) |
| Maryland Department of State Police | ) |
| 1201 Reisterstown Road | ) |
| Pikesville, Maryland 21208, | ) |
| *Defendant*. | ) |

**CIVIL COMPLAINT FOR MONETARY AND EQUITABLE RELIEF**

Plaintiff Anthony J. Romano, by and through undersigned counsel, brings this action against Defendant Maryland State Police ("MSP") under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA").

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331 because it asserts claims that arise under the laws of the United States, specifically the ADEA.

2. This Court has personal jurisdiction over the Defendant because it has substantial contacts with and conducts its activity across the State of Maryland.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district.

## PARTIES

4. Plaintiff is a resident of Miami, Florida who resided and was employed within the State of Maryland during the course of his employment with Defendant.

5. Defendant is an arm of the State of Maryland with its principal office address located at 1201 Reisterstown Road, Pikesville, Maryland 21208.

## ADMINISTRATIVE PREREQUISITES

6. Mr. Romano has complied with all administrative prerequisites necessary to bring this action.

7. Mr. Romano timely filed a charge of age discrimination against MSP on or about April 8, 2020, through the Maryland Commission on Civil Rights.

8. Mr. Romano received a notice of Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission (EEOC) on or about April 28, 2023, that provided a 90-day filing period.

## FACTUAL ALLEGATIONS

9. Mr. Romano is a former Maryland state trooper who began his employment with the MSP in or about September 1993.

10. MSP is the official state police force of the State of Maryland.

11. MSP offers a Deferred Retirement Option Program (DROP) for eligible members of the State Police Retirement System. The DROP Program offers participants the option to begin accruing retirement benefits while they continue to work (and draw a paycheck) in exchange for committing to a firm end-date for their MS employment.

12. Members in DROP are "retirees" of the State Police Retirement System. MSP DROP participants, by virtue of receiving both a salary and retirement benefits, accrue higher

earnings than their contemporaries who have not entered into the DROP program.

13. The most substantial (and expensive for the State Police Retirement System) benefit to DROP participation is the lump sum payment (optional roll over) that the member accumulates during participation and then receives, along with a monthly retirement check, at the end of the DROP period. The member can elect to receive the lump sum (typically between $300,000 and $450,000) or, if the member participated in DROP for at least seven months, they may direct the Retirement Agency to rollover tax-free the taxable portion of their DROP account to a custodian of an eligible retirement plan. Retirement benefits deposited in the DROP account earn 4% a year, compounded annually. These benefits also receive all eligible cost-of living adjustments (COLA) applied while the member is a DROP participant.

14. MSP's DROP program is designed to incentivize older MSP employees to establish firm dates of retirement so that MSP can reduce the service years of expensive and physically declining troopers.

15. A member's participation in the DROP program ends if the member is terminated from employment by the MSP at any time before the date specified on the member's election form, and MSP does not have to pay the member for any time after their employment terminates. When this occurs MSP enjoys a financial windfall, as it gets the benefit of reducing the service years of expensive and physically declining troopers but not paying them for the remaining years of their contract term, which are, by definition, the most expensive years.

16. Mr. Romano entered into MSP's DROP Program on or about September 1, 2017, and so his DROP termination date was mandated to be September 1, 2022.

17. MSP implemented a new personnel policy regarding body modification on September 21, 2017, that prohibited "full sleeve tattoos or any sleeve tattoo that continues past

the elbow."

18. Mr. Romano obtained a tattoo on his arm, below the elbow, on or about December 20, 2017.

19. As of December 20, 2017, Mr. Romano was unaware that a new policy had been enacted that impacted the punishment associated with tattoos.

20. On or about January 3, 2018, Mr. Romano showed the tattoo to his supervisor in cooperation with an investigation that had been triggered by a verbal complaint made about the tattoo.

21. MSP charged Mr. Romano with four administrative charges of misconduct related to his tattoo on or about September 4, 2018. Faced with the threat of termination, Mr. Romano agreed to undergo tattoo removal rather than be terminated.

22. Mr. Romano subsequently verbally informed supervisors of other, younger employees within the MSP that had arm tattoos that extend beyond the elbow and inquired why the policy was not being applied across all of MSP's workforce. However, the MSP did not initiate investigations into the tattoos of younger troopers that Mr. Romano identified as having tattoos below the elbow.

23. Mr. Romano tore his labrum, bicep, and rotator in a non-service-related injury in or about February 2019.

24. Mr. Romano underwent surgery to repair his labrum, bicep, and rotator and returned to full service in or about June 2019.

25. In or about August 2019, Mr. Romano informed the MSP that, due to the overwhelming pain involved in the tattoo removal process and the intense emotional pain involved in removing an homage to his parents, he could not continue with the removal process.

26. On or about October 2, 2019, the MSP terminated Mr. Romano's employment after reinstating the administrative charges against him, thus allowing it to avoid paying Mr. Romano the final and most substantial financial compensation that was due and owing because of his DROP retirement program participation. However, the MSP did not similarly discipline and terminate younger employees who transgressed the same body modification policy because their financial compensation was substantially less than Mr. Romano's.

27. The MSP retained employees younger than Mr. Romano after the body modification policy was enacted, and prior to Mr. Romano's eventual termination, with tattoos that were substantially similar to Mr. Romano's tattoos.

28. The MSP did not enforce the body modification policy as aggressively against younger employees whose annual compensation was substantially lower than Mr. Romano's compensation, which was nearing its maximum compensation rate and expense due to his years of service and the culmination of his participation in the DROP program.

29. Mr. Romano has been unable to secure gainful employment as a police officer following his termination by the MSP, despite his best efforts, in part or in whole due to the perception caused by his termination by the MSP.

30. As a result of MSP's illegal actions, Mr. Romano has suffered economic damages and mental anguish, and he will continue to sustain damages into the future.

**COUNT I**
**Age Discrimination in Employment Act of 1967**
**29 U.S.C. §§ 621** *et seq.*

31. Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

32. Defendant is engaged in an industry affecting commerce with twenty or more

employees for each working day of the year.

33. Defendant is an "employer" for purposes of the ADEA, 29 U.S.C. § 630(b).

34. Plaintiff is an "employee" of Defendant for purposes of the ADEA, 29 U.S.C. § 630(f).

35. Plaintiff is in an ADEA-protected class of employees because he is forty years old or older, as defined in 29 U.S.C. § 633(a).

36. Defendant treated Plaintiff in a disparate manner because of his age when it terminated Plaintiff's employment.

37. Defendant's proposed legitimate business reason for its decision to fire Plaintiff is pretext.

38. Plaintiff sustained substantial monetary and non-monetary damages as a result of Defendant's illegal conduct.

39. Plaintiff demands such legal or equitable relief as will effectuate the purposes of the ADEA including, but not limited to: economic damages (including accrual of back pay, front pay, and lost market pay); compensatory damages; attorneys' fees and costs; equitable relief (including appropriate affirmative action and injunctive relief); and, any other relief this Court deems just and equitable.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff respectfully requests that he be awarded the following relief from the Defendant:

a. Economic damages for lost compensation, lost Deferred Retirement Option Program benefits, and damage to Plaintiff's career;

b. Compensatory damages, including but not limited to pain and suffering,

      emotional distress and reputational damage;

c.     Reemployment, reinstatement, promotion, front pay, or other equitable relief;

d.     Reasonable costs and experts' and attorneys' fees;

e.     Pre-judgement interest;

f.     Interest due on unpaid wages, and Deferred Retirement Option Program benefits; and

g.     Any other such relief that the Court may deem just and equitable.

                                    Respectfully submitted,

/s/ Nicholas Woodfield
R. Scott Oswald, MD Bar 25391
Nicholas Woodfield, MD Bar 15474
The Employment Law Group, P.C.
1717 K St. NW, Suite 1110
Washington, DC 20006-5345
(202) 261-2812
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
nwoodfield@employmentlawgroup.com